**IN THE COURT OF APPEALS OF IOWA**

No. 14-0514
Filed June 11, 2014

**IN THE INTEREST OF H.B.,**
**Minor Child,**

**D.B., Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

A father appeals from the juvenile court's order terminating his parental rights. **AFFIRMED.**

Jay W. Mez, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Dawn M. Landon, Assistant County Attorney, for appellee State.

Roberta Megel of the State Public Defender, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

A father appeals from the order terminating his parental rights. Upon our de novo review, we affirm.

### I. Background Facts and Proceedings.

H.B., born in 2010, came to the attention of the Iowa Department of Human Services (Department) in October 2012, after law enforcement officers responded to an incident of domestic violence between the child's parents. The officers noted the child was extremely dirty with a bad odor coming from her body, and the home smelled of animal urine and feces. The child was removed from the parents' care shortly thereafter due to the "deplorable and unsanitary" living conditions of the home, and the child was placed in foster care.

The mother admitted to substance abuse and reported that the father used substances with her. The father generally denied substance abuse, but he tested positive for marijuana at the time of the removal hearing. The juvenile court directed the parents to complete chemical dependency and mental health evaluations and to follow the recommendations of the evaluators. The court also directed the parents to submit to random drug screens and participate in family safety, risk and permanency services. To that end, the parents were offered services, along with visitation and anger management assistance.

The father's participation in services was sporadic. He was requested to complete fifty-four drug tests, but he missed forty-three of the appointments. The majority of the few tests he did complete were positive for illegal substances. At the permanency hearing in October 2013, the juvenile court directed the father complete a hair stat test. Immediately thereafter, he shaved his head. Body hair

was tested, and the father tested positive for illegal substances. Due to the father's lack of participation and progress in the case, the court ultimately directed the State file a petition for termination of his parental rights.

The State filed its petition for termination of the father's parental rights in January 2014. Hearing on the petition was held in March 2014. Thereafter, the court entered its ruling terminating the father's parental rights pursuant to Iowa Code section 232.116(1) paragraphs (d), (f), (i), and (l) (2013). The court determined termination was in the child's best interest, and it declined to apply the factors in section 232.116(3) to avoid termination of his parental rights.

The father now appeals.[1]

## II. Analysis.

In determining whether parental rights should be terminated under chapter 232, the juvenile court "follows a three-step analysis." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *Id.* If the court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *Id.* at 706-07. Even if the court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and

---

[1] The father has also filed a motion to strike the State's response in this matter as untimely under Iowa Code section 6.202(2) (2013). The father served his petition by mail on appeal on April 29, 2014. Because the State was served the petition by mail, it was allowed to add three days to the fifteen-day deadline to file its response. *See* Iowa R. App. P. 6.701(6). In this case, the extended deadline landed on a weekend, so the State had until the next business day (May 19, 2014) to file its response. *See* Iowa Code § 4.1(34). The State's response was timely filed on that date. The father's motion is therefore denied.

final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

On appeal, we review the juvenile court's decision to terminate parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Although we are not bound by the court's factual findings, we do give them weight, particularly any credibility findings made. *Id.* If the juvenile court finds multiple grounds for termination exist under section 232.116(1), we need only to determine, on our de novo review, if there is clear and convincing evidence supporting one of those grounds in the record. *D.W.*, 791 N.W.2d at 707; *see also In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct. App. 1995).

Here, the father contends the State failed to prove the grounds for termination found by the juvenile court and that his parental rights should not be terminated because section 232.116(3)(c) applies. We address his arguments in turn.

### A. *Grounds for Termination.*

Among other grounds, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(f), which provides termination is appropriate where:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The child was over four years old at the time of trial, had been adjudicated CINA in December of 2012, and had been out of the father's custody since October 2012. The only debatable issue is whether the child could be returned to the father's custody under section 232.102 at the time of the hearing. Iowa Code § 232.116(1)(f)(4). Upon our de novo review, we agree with the juvenile court's determination that the child could not be returned to the father's care at the time of the termination-of-parental-rights hearing.

While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *A.M.*, 843 N.W.2d at 111 (citation and internal quotation marks omitted). For children adjudicated in need of assistance (CINA) aged four and older, the legislature incorporated a statutory timeframe of one year. *See* Iowa Code § 232.116(1)(f)(2), (3). Our supreme court has stated "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing Iowa Code § 232.116(1)(e)). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification.

Here, the same concerns that existed at the October 2012 removal hearing still existed at the time of the termination hearing. At the 2012 hearing, the father was directed to complete mental health and substance abuse

evaluations, comply with the evaluators' recommendations, and provide random drug screens. While the father maintains the delay in his mental health and substance abuse treatment was the fault of others, upon our review of the record, we agree with the juvenile court's assessment:

> Evidence reflected opportunities for [the father] to address his mental health needs long before November 2013. [The father] was indecisive as to what he wanted to do and in the end, it was his decision to wait. [The child] can't continue to wait for either parent to show consistent compliance with the case plan.

The father chose to participate minimally during the majority of the case, despite the child's need of her father and permanency. He chose to miss drug tests, and when confronted about his substance abuse, made excuses and issued denials. We agree with the court that the evidence presented at the termination hearing clearly and convincingly demonstrated the child could not be returned to his care at that time or in the foreseeable future. Accordingly, we affirm on this issue.

### B. Potential Grounds Not to Terminate.

> Section 232.116(3) provides that the court need not terminate the relationship between the parent and child under certain circumstances. A finding under subsection 3 allows the court not to terminate. The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.

*A.M.*, 843 N.W.2d at 113 (internal citations and quotation marks omitted).

Here, the father contends termination was not necessary because of the closeness of his relationship with the child. *See* Iowa Code § 232.116(3)(c). However, we conclude upon our de novo review that the child's bond with father does not weigh heavily enough to reverse the termination. Under the facts of this

case, we cannot maintain the parent-child relationship where there exists only a remote possibility the father will become a responsible and consistent parent sometime in the unknown future. *See In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007) (describing strong bond between parent and child as militating factor, but not overriding consideration). This child deserves permanency now and should not have to wait any longer for the father to put her needs first. *See D.W.*, 791 N.W.2d at 707-08. Termination will provide the child with the safety, security, and permanency she deserves. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). The child is doing well in her foster placement. We believe the child's best interests are served by severing her legal tie with the father, and we therefore decline to invoke section 232.116(3).

### III. Conclusion.

For the foregoing reasons, we affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED.**